**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 12-cv-03040-CMA-CBS

MAHAMET CAMARA,
MOUSSA DEMBELE,
ANDRE DeOLIVEIRA,
BEMBA DIALLO,
SALIF DIALLO,
MACIRE DIARRA,
ERNIE DUKE,
MOHAMED KABA,
DEAN PATRICELLI, and
ERNEST WILLIAMS,

    Plaintiffs,

v.

CRESENCIO SANCHEZ,

    Intervenor Plaintiff,

v.

MATHESON TRUCKING, INC., a California corporation; and
MATHESON FLIGHT EXTENDERS, INC., a California corporation,

    Defendants.

**ORDER DENYING PARTIES' MOTIONS FOR PARTIAL SUMMARY JUDGMENT**

    This is a race discrimination and retaliation case in which Plaintiffs—employees at a shipping company—allege that Defendants—Matheson Trucking and its subsidiary, Matheson Flight Extenders (MFE)—used a series of seemingly neutral employment policy proposals and actions as a means of effectively demoting and terminating certain employees because of their race or because they opposed discrimination. Plaintiffs

further contend that this Court should find as a matter of law that the parent and subsidiary defendants should be considered a single or joint entity for purposes of determining liability on many of their legal claims. Finally, Plaintiffs allege that Defendants are precluded as a matter of law from asserting many of the affirmative defenses they raised earlier in the litigation.

Defendants contend that the potentially discriminatory employment actions were business judgments and, therefore, should not be scrutinized by this Court. They further argue that there are fact disputes on whether they should be considered as a single or joint employer. The factual disputes raised by the parties preclude granting summary judgment to either side. Both motions are denied.[1]

## I. **STANDARD OF REVIEW**

Summary judgment is appropriate if the moving party demonstrates there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). In applying this standard, the Court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal–Mart Stores, Inc.,* 144 F.3d 664, 670 (10th Cir. 1998).

---

[1] At the outset, this Court advises both parties that they have exceeded the limits of what is proper in terms of litigating the summary judgment motions. For example, Defendants, by including both forty pages of briefing and forty additional pages of analysis of facts raised in Plaintiffs' Response, have what is effectively an eighty-page reply brief in support of their Motion for Summary Judgment. *See* (Doc. ## 95, 95-1.) Not to be outdone, Plaintiffs have submitted a ten-page surresponse to the Reply (Doc. # 98-1) in an effort to get the last word on their opponents' motion. Predictably, the parties point the finger at each other for the proliferation of briefing on these motions and assert that this Court should disregard portions of what the other has submitted. Nonetheless, this Court has exercised its discretion and considered the entirety of what Defendants rightly described as the "particularly voluminous" (Doc. # 102 at 9) briefing presented to this Court. The parties are warned that they should not try this Court's patience again with such excessive filings.

## II. ANALYSIS

**A. DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

First, the Court denies Defendants' motion for partial summary judgment. The Court need not explain the basis for finding genuine issues of material fact as to each claim but takes this opportunity, in light of the pending settlement conference and upcoming trial, to provide preliminary thoughts on what it believes are the issues central to the dispute between the parties.

An anchor of Plaintiffs' case is that Leslie Capra, the Manager at Defendants' Denver shipping facility from 2008-2011, intentionally created unfair employment policies targeting minority workers for demotions and reductions in hours. Specifically, Plaintiffs allege Capra intended to use a December 2010 work furlough and a 2011 shift-bid process as pretext for functionally eliminating or demoting unwanted minority employees. In response, Defendants claim that the policies they implemented were motivated by legitimate business goals, rather than discriminatory animus.

Based on the evidence in the record, a reasonable juror could find that Defendants' employment actions were not motivated by legitimate business reasons, but rather, were implemented for discriminatory purposes. One illustrative example concerns Defendants' proffered explanation for why they instituted the shift-bid process. Defendants allege that Leslie Capra, Denver Station Manager, enacted the shift bid system "on a facility-wide basis" in order "to appease employees' requests" to eliminate perceived favoritism and make new shifts available to everyone—and not as a means of effectively demoting, terminating, or promoting employees. (Doc. # 72 at 40.)

One problem with Defendants' theory, however, is that the evidence presented appears to contradict that justification. For example, consider the following passages from emails sent by Capra:

(1) Capra discussing why to pursue the "shift bid" plan—"We need to do this so I can get some of **our people** moved to regular employees." (Doc. # 85-10 at 20) (emphasis added)

(2) Capra discussing the "shift bid" plan:

> It may be advantageous to us since some of the less productive people have already voiced they cannot work a full shift. **These people** would then go to an "on call" position. If we can maintain the productive workers and implement the bid shift **we would then be viewed as moving forward with a set plan**.

(Doc. # 85-10 at 42) (emphasis added)

This Court believes that reasonable jurors could interpret these references to "our people" and "these people" in the above passages as attempts to avoid politically incorrect references to racial distinctions. At any rate, this evidence calls into question Defendants' position that the shift-bid system was fruit of a collaborative effort with employees to address favoritism.

Defendants should review the entirety of the record evidence presented by Plaintiffs,[2] and ask themselves whether they honestly believe **there is no potential**

---

[2] Defendants argue that the two emails quoted above, along with much additional evidence cited by Plaintiffs, should not be considered because it is "unauthenticated" and therefore cannot be considered. *See, e.g.*, (Doc. # 95-1 at 26 (suggesting that Plaintiffs have "failed to authenticate" many relevant exhibits).). But Defendants fail to acknowledge the well-established principle that most documents **Defendants themselves produce** in discovery are *per se* authentic and need not be further authenticated to be considered on summary judgment. *See, e.g.*, Charles Alan Wright, et al., 31 Fed. Prac. & Proc. Evid. § 7109 (1st ed. Apr. 2014 update) (noting it is normally assumed that "when a party produces a document in connection with pretrial discovery, the very act of production may be taken as an admission as to authenticity where that document purports to be created by the person who produced it"); *see also Law Co.*

4

**debate** as to whether Defendants' purported reasons for implementing the shift bid process, which resulted in putting some Plaintiffs "on call," were merely pretext for discrimination.  The same holds true for the other bases to defending liability that are raised in Defendants' summary judgment motion.

**B.      PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGEMENT**

Plaintiffs' motion for partial summary judgment relates in part to whether MFE and Matheson Trucking are a single entity or joint employer for purposes of Title VII liability.  Based upon the parties' briefing and the Court's own independent research on this issue, the Court notes that there is no clear guidance from the Tenth Circuit on how many of the plethora of factors are necessary to be dispositive as to this question, when considering either the single entity or joint employer tests and deciding this question as a matter of law.

More importantly, "[a]s a general rule, determining whether an entity qualifies as an employer is a fact issue for the jury." *Bristol v. Bd. of Cnty. Comm'rs of Cnty. of Clear Creek*, 312 F.3d 1213, 1221 (10th Cir. 2002) (en banc) (internal quotation marks omitted).  Because of this "general rule"—unacknowledged by **either** party—it makes sense that Plaintiffs can cite **no** authority from the Tenth Circuit deciding the joint/single employer question as a matter of law in favor of a plaintiff.  To the contrary, all of the

---

*v. Mohawk Const. & Supply Co.*, 577 F.3d 1164, 1170 (10th Cir. 2009).  This Court sees no reason—especially absent any explanation from Defendants—as to why this principle regarding authenticity does not apply here.  Further, although not crucial for deciding the present motions, most of these records quoted above appear to be business records and presumably will be admissible at trial—though the Court reserves ruling on this issue at this time.  In sum, like it or not, Defendants must consider the import of these documents: ill-informed objections as to their authenticity are not enough to hide the potential story Capra's communications tell.

authorities Plaintiffs cite only establish that an entity is an employer on a lower standard. *See Knowlton v. Teltrust Phones, Inc.*, 189 F.3d 1177, 1184 (10th Cir. 1999) (affirming a jury finding of that defendants were a single employer); *Armbruster v. Quinn*, 711 F.2d 1332, 1339 (6th Cir. 1983) (holding that plaintiffs met their burden of establishing, by a preponderance of the evidence, a prima facie case of single employer status), *abrogated on other grounds by Arbaugh v. Y&H Corp.*, 546 U.S. 500 (2006); *EEOC v. Fin. Assur., Inc.*, 624 F. Supp. 686, 689 (W.D. Mo. 1985) (establishing single employer status by a preponderance of the evidence); *Perry v. Manocherian*, 675 F. Supp. 1417, 1425-26 (S.D.N.Y. 1987) (denying a defendant's contention in a summary judgment motion that a parent company could not be considered a single employer with a subsidiary);[3] *see also Bristol*, 312 F.3d 1213 (granting judgment as a matter of law **against** a jury finding that either the joint/single employer test was met).

At the end of the day, "the heart of the inquiry is whether there is an absence of an arm's-length relationship among the companies," especially as it relates to labor relations. *Knowlton v. Teltrust Phones, Inc.*, 189 F.3d 1177, 1184 (10th Cir. 1999); *see also Frank v. U.S. W., Inc.*, 3 F.3d 1357, 1363 (10th Cir. 1993) ("The critical question is, what entity made the final decisions regarding employment matters related to the person claiming discrimination?" (alterations and internal quotation marks omitted)).

---

[3] *Perry* does not fully clarify the result it reached: the language Plaintiffs rely upon from this case addressed a contention raised in a defendant's affidavit that stated that two parties "are unconnected with [the allegedly discriminatory subsidiary] and thus are not proper parties to this action." *Id.* at 1425. The *Perry* court rebutted this contention by stating that the "record is replete with facts indicating the interrelatedness of [the parent] and [the subsidiary]" and then concluded that the parent "is properly a party to this suit." *Id.* This confusing representation could be construed as granting judgment to the *Perry* plaintiffs on this issue. Even if that is the proper way to interpret *Perry*, it is a thirty-year-old finding from an out-of-circuit court that is in clear tension with the general rule applied in this circuit.

Plaintiffs emphasize, among other things, that the Human Resources Director of the entire Matheson Trucking operation, Michael Wilbourn: (1) wrote the MFE employee handbook; (2) was involved in a number of the questionable policy decisions made at MFE, including the implementation of the bidding system; and (3) was the point person for all MFE employee's harassment/EEO concerns.

Defendants, on the other hand, argue that Wilbourn: 1) was exclusively a **Matheson** employee; 2) essentially worked as an outside consultant for MFE, assisting but not managing, the Denver MFE operation; and 3) was paid by MFE separately when he worked on Flight Extenders' behalf. Although Defendants attempt to distance Wilbourn from some of the termination decisions and creation of the hiring policies, he appears to have had at least an indirect role in some of these matters, *e.g.*, the termination of Plaintiff Dean Patricelli.

If this Court were deciding this matter on a lower standard, it **might** be inclined to agree with Plaintiffs as to the single/joint employer question—and Defendants should honestly consider how the jury will interpret Defendants' view of Wilbourn's allegedly limited role in MFE employment matters and the alleged lack of interrelation between the two entities. However, given the reasonable disputes about the import of the issues discussed above (among others), the Court concludes that genuine issues of material fact preclude granting the summary judgment motion as to the issue of whether Defendants function as a single entity or joint employer for purposes of Title VII and § 1981.

The Court also denies summary judgment as to the other issues raised in Plaintiffs' briefing, as there are reasonable disputes of material fact as to all items in Plaintiffs' motion that are contested by Defendants.[4]

### III. CONCLUSION

Accordingly, the Court ORDERS that Defendants' Motion for Partial Summary Judgment (Doc. # 72) and Plaintiffs' Motion for Partial Summary Judgment (Doc. # 89) are DENIED.  FURTHER ORDERED that Plaintiffs' Motion to Strike (Doc. # 97) is DENIED and Plaintiffs' Motion for Leave to File a Surresponse (Doc. # 98) is GRANTED

DATED: September 23, 2013

BY THE COURT:

_Christine M Arguello_

CHRISTINE M. ARGUELLO
United States District Judge

---

[4] As to the question of whether Plaintiffs have failed to exhaust certain claims, which are now time-barred, these issues are raised with insufficient specificity by the parties in briefing both motions for summary judgment, and the Court therefore has an inadequate basis to make an informed ruling on the matter.  The Court is amenable to accepting limited additional briefing—in the form of a motion in limine before trial—as to how the allegations raised in particular EEOC complaints limit the scope of the evidence and allegations Plaintiffs may present at trial.